## AFFIDAVIT OF SPECIAL AGENT RONALD MORIN

I, Ronald Morin, being first duly sworn, depose and state as follows:

### INTRODUCTION

1. I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI), and have been so employed since May 2006. I am currently assigned to the Manchester, New Hampshire field office. As part of my regular duties as an agent, I investigate criminal violations relating to a broad range of immigration and customs related statutes, including those relating to child exploitation and child pornography. I have received training in the area of child pornography and child exploitation, and as part of my duties have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. §2256) in various forms of media, including digital/computer media. I have conducted investigations and executed search warrants involving child exploitation and child pornography offenses.

2. As a federal agent, I am authorized to investigate violations of the laws of the United States, and to execute warrants issued under the authority of the United States.

3. I submit this affidavit in support of the issuance of an Arrest Warrant for Michael A. CLEMENCE (hereafter "CLEMENCE", DOB: 11/30/1985), in an ongoing criminal case. Because this Affidavit is submitted for the limited purpose of obtaining an arrest warrant, I have included those facts which I believe are material and necessary to establish the existence of probable cause to support the issuance of the requested warrant. I have not included each and every fact known to me and to other agents working on this investigation.

### STATUTORY AUTHORITY

4. Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2) prohibit any person from knowingly possessing or accessing with the intent to view, or attempting or conspiring to possess or access with the intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that Michael A. CLEMENCE committed violations of **18 U.S.C § 2252 – Certain Activities Relating to Material Involving the Sexual Exploitation of Minors.**

## PROBABLE CAUSE

6. In February 2020, the HSI Manchester, NH, office received information that originated from a foreign law enforcement agency known to the Federal Bureau of Investigation (FBI) and with a history of providing reliable, accurate information in the past. In part, the information provided by the foreign law enforcement agency specified that on April 28, 2019, at 20:25:08 UTC, an individual originating from IP address 65.175.213.176 accessed a known Darknet web site that facilitated the sharing of child sex abuse and exploitation material with a particular emphasis on sexually explicit material depicting young boys. Users of the website were able to view some material without creating an account. However, an account was required to post and access all content.

7. According to publicly available information, IP address 65.175.213.176 is owned

and operated by Atlantic Broadband. On or about September 9, 2019, a summons was served on Atlantic Broadband for subscriber information associated with the IP address on April 28, 2019 at 20:25:08 UTC. Atlantic Broadband provided the following subscriber details:

    a. Subscriber name: Michael Clemence

    b. Service and billing address: 27A Crow Hill Road, Rochester NH

    c. Phone numbers: 480-694-7209, 603-507-0703

8. A query of publicly available databases for information related to Michael Clemence revealed the following: year of birth 1985; last known address: 31 Adams Avenue, Rochester, NH. The queries also indicated that Michael Clemence is married to Elizabeth Clemence and has two young children.

9. CLEAR records identified Michael Clements' date of birth as [REDACTED]/1985, SSN [REDACTED], address 31 Adams Ave. Rochester NH, email address enderwigman@msn.com. Criminal history checks revealed no derogatory information. Property record checks indicated that he purchased the Adams Ave. property on 10/28/2019 with Elizabeth Anne Clemence.

10. On May 26, 2021, SA Mike Perella, SA Sean Serra, and SA Derek Dunn conducted a consensual knock and talk with Michael Clemence ("Clemence") at 31 Adams Ave in Rochester. Clemence answered the door and agents identified themselves. SA Perella advised Clemence that agents were at his residence to ask about certain internet activity that occurred in April of 2019 at his previous residence, 27A Crow Hill Rd. in Rochester. Clemence expressed suspicion at the reason for agents' presence and advised that he had consumed a couple of beers. Clemence advised that his wife, Elizabeth, was at work.

11. During the conversation, Clemence volunteered that the tenant that lived next

3

door to him at 27A Crow Hill Drive was an IT specialist and had done some IT work for him. Clemence identified this neighbor as "Kevin," and advised that "Kevin" had since moved to Maine. Clemence was vague about the nature of the IT work "Kevin" had done for him in the past.

12. Agents advised Clemence that they were investigating internet activity associated with child exploitation material, and that some of this activity occurred in April 2019 from the IP address associated with his previous residence on Crow Hill Rd. Clemence expressed vague familiarity with the dark web, offering that he understood that it was used to buy and sell illegal drugs. When asked, Clemence denied any knowledge of Tor.

13. Clemence then described an event that took place around that same time in 2019 in which his wife was looking on their laptop and she viewed something that appeared to be "really bad." Clemence relayed that his wife was very alarmed at what she saw on the computer and she did not know what it was or how it got onto the computer. Clemence did not elaborate or provide specifics about what his wife had observed on the computer. After observing this material on the computer, he and his wife "wiped" the computer and gave it to a family friend.

14. Agents asked Clemence about the computer he currently had. In response, Clements stated that he had a computer that he used for work and offered to allow agents to conduct a manual review of this computer. A manual review was conducted onsite, and no illicit material was observed. Agents left their contact information with Clemence and advised that they would like Clemence's wife to contact them to arrange an interview. Clemence's wife, Elizabeth Clemence ("Elizabeth") contacted agents the following day and eventually made arrangements to be interviewed at her home on June 4, 2021.

15. On June 4, 2021 SA Mike Perella and I returned to 31 Adams Avenue in

Rochester at approximately 10:44 a.m. to conduct a consensual interview of Elizabeth Clemence. Elizabeth disclosed that on May 18, 2019, she was printing church documents from a household computer and accessed a folder titled "Documents." She advised that the computer was a Dell laptop that belonged to her husband, but that they both used the computer. Within the "Documents" folder, she saw approximately 14,000 images and videos of what appeared to Elizabeth to depict child pornography. She described one file as two naked boys in a bathtub. In addition, Elizabeth advised that the filenames that she observed were consistent with child pornographic material. This occurred when they were living on Crow Hill Road in Rochester. Elizabeth advised that their internet connection at that home was secure and that nobody had the password.

16. Elizabeth advised that when she confronted Clemence about what she found on the computer, he stated he didn't know how it got there and suggested that their computer must have been hacked. Elizabeth explained that she and Clemence did not know what to do about the material she had located on their computer. They considered going to the police, but at the time they were exploring the possibility of fostering children and they were concerned about jeopardizing their ability to do so. As a result, they decided to wipe the hard drive themselves. They also changed the passwords to the computer and the wireless internet. Elizabeth recalled it was possible that their neighbor, Kevin Mayfield, helped them change the password for the internet. They subsequently called an attorney the following Monday, and the attorney purportedly concurred that it was good they wiped the hard drive. Elizabeth advised that she and Clemence were very concerned about the incident when it occurred and that they talked about it with their pastor and several close friends.

17. Elizabeth advised that at the beginning of the pandemic, a couple that they were

friends with from church, Drew and Sarah Lytle, were in need of a computer for Zoom meetings. Elizabeth and Clemence decided to give them their Dell laptop computer. Prior to giving the computer to the Lytles, Elizabeth and Clemence wiped the hard drive a second time. The Lytles gave the computer to their eldest son. Elizabeth advised that the Lytles live in Lebanon, Maine, and advised that after speaking with agents the week of May 26, 2021, Clemence did retrieve the Dell laptop computer from the Lytles.

18. Elizabeth advised that when she learned from Clemence that agents had been at their residence the previous week and learned the nature of their investigation, she checked all of the thumb drives in the house for the presence of child pornography. She did this without Clemence's knowledge. She advised that she did not locate anything that appeared to be child pornography. Elizabeth further disclosed that she and Clemence have an "open marriage" in the sense that they share access to each other's online accounts, including email, social media, financial accounts, etc. They also share access to the electronic devices in the home.

19. Elizabeth was asked whose name the internet service was in at their previous address on Crow Hill Road. Elizabeth left the room to consult her records and returned with some paper files. Elizabeth was also asked about who paid the bills, took care of household finances, etc., and Elizabeth stated that she did. Elizabeth was asked whether she recalled any unusual or suspicious purchases around the time of April or May 2019 when this activity occurred. She indicated she could not recall anything offhand, but asked if she could consult her records. She left the room and returned with a laptop computer, which she used to access her financial accounts and did not find anything noteworthy.

20. Elizabeth asked whether there was anything else that she should "look for," and SA Perella and I explained that we could not direct her to do any specific searching of

6

Clemence's devices or accounts. However, we advised that there were certain applications and cloud storage accounts that are commonly encountered in these types of investigations. Elizabeth stated that Clemence did have a cloud storage account that she also had access to and stated that she was "on it right now." Elizabeth was advised that if she encountered anything concerning in the accounts to which she and her husband shared access, she should contact us. SA Perella and I left contact information with Elizabeth and departed the residence.

21. A short time later, while SA Perella and I were en route back to our office, I received a telephone call from Elizabeth Clemence. Elizabeth disclosed that while reviewing the contents of Clemence's Google Drive account, she observed approximately four videos that appeared to depict child pornography. She described one such video as two male children that were clothed and spanking each other. Another video appeared to depict two young boys, approximately 13 years old, performing oral sex on each other. She later described a third video in which it appeared that an adult male was engaged in anal penetration of a prepubescent boy that appeared to be approximately 10 years old. The boy was blindfolded and had something over his mouth.

22. Elizabeth advised that the cloud storage account is connected to her husband's Gmail account, which is mike.clemence@gmail.com, and that both the email address and password, both of which she has access to, are required to login to the Google Drive account. Elizabeth further stated that Clemence had access to his Gmail account on his cell phone.

23. Upon learning this information, SA Perella and I determined that we would return to the residence and secure it so that we could seek a search warrant. When we arrived back at the residence at approximately 2:50 pm, we observed a red Honda Civic with NH registration 3936669 parked in the driveway. Clemence was seated in the driver's seat with the driver's door

7

ajar and one foot out the door. Clemence appeared to have his cell phone in his hand. Upon parking our vehicle, Clemence exited his car, leaving the door ajar, and placed his cell phone on the front passenger seat. SA Perella observed the cell phone in plain view on the vehicle seat and noticed that the screen was illuminated and it appeared that a video was playing. SA Perella asked Clemence whether the cell phone on the seat was his, and Clemence confirmed that it was. SA Perella advised Clemence that agents would be securing the phone so that they could apply for a search warrant for its contents.

24. Clemence was extremely agitated and upset that agents had seized his phone. We explained that additional information had come to light since the interview with him the previous week. We further explained that Clemence was not under arrest and that he was free to leave. I advised Clemence of his rights, and Clemence advised that he would like to speak with a lawyer. I offered Clemence the use of their my cell phone in order to allow Clemence to contact his attorney, but Clemence refused and insisted that he needed his own cell phone in order to get his attorney's contact information. Eventually, Clemence's wife provided a business card with their attorney's phone number on it, but Clemence still declined to use agents' phones to call his attorney despite offers from multiple agents and local law enforcement officers who had arrived to help secure the residence. Clemence left the residence in his vehicle a short time later.

25. I reviewed two of the videos that Elizabeth previously described to me over the phone that appeared to Elizabeth to depict child pornography. Based on my training and experience, I agree that they appeared to depict child pornographic material. Elizabeth also described a concerning photograph of her 3 year old son that she found in Clemence's Google Drive account. She stated that her son was depicted naked from the waist down facing the wall. It appeared to have been taken in the home of the basement and depicted her son's buttocks.

8

Elizabeth explained that Clemence is responsible for disciplining the children and stated that when he does so he takes them to a private area of the house. Elizabeth pointed out a wooden implement on a bureau in the children's bedroom that Clemence uses to discipline the children.

26. Elizabeth pointed out the location of electronic devices and storage media in the home and identified who primarily used each item. Elizabeth identified an Asus laptop computer that she uses for work and a thumb drive with the description "Geek Squad 16GB". Elizabeth stated that the thumb drive belongs to Clemence, but that she had her resume and a couple other personal documents stored on the device. Agents agreed to review the contents of these two (2) devices first, in attempt to return them as soon as we could.

27. On June 7, 2021, HSI Special Agent Shawn Serra advised me that a preliminary review of the "Geek Squad 16GB" thumb drive identified a deleted folder named "conscript" which contained numerous files (images/videos) of minors engaged in sexually explicit conduct. I reviewed several of these files and observed that the minors were primarily pre-pubescent Caucasian males. Based on my training and experience, these files depict child pornography. Additionally, there were files of nude minors tied up/bound and files of nude minors being physically disciplined.

28. On June 7, 2021, I received a telephone call from Elizabeth. She stated that she received a call from her pastor, David Koenick, who said Clemence wanted her to go to the house and retrieve his US Passport and Social Security Card. Elizabeth said she suspects that Clemence is likely preparing to flee.

29. New Hampshire Division of Motor Vehicles records identified that Michael A. CLEMENCE, DOB: 11/30/1985 has New Hampshire Driver's License# 11CEM85301, with description: height 5 feet 10 inches, weight 135, eyes brown.

30. New Hampshire Division of Motor Vehicles records identified that Michael A. CLEMENCE has a maroon 2014 Honda Civic LX bearing NH Registration 3936669.

## CONCLUSION

31. Based on the aforementioned information, there is probable cause to believe that Michael A. CLEMENCE knowingly possessed or accessed with the intent to view, or attempted or conspired to possess or access with the intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct, in violation of 6.   Title 18, United States Code, Section 2252(a)(4)(B) and (b)(2).

Respectfully submitted,

/s/ Ronald Morin
Ronald Morin
Special Agent
Homeland Security Investigations

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: **Jun 7, 2021**
Time: 5:02 PM, Jun 7, 2021

HONORABLE  ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE